1  JAMES N. MAYNARD, ESQ. (STATE BAR # 165467)
2  LAW OFFICES OF JAMES N. MAYNARD
   POB 1392
3  BONSALL, CA 92003
   (760) 231-5883
4  Fax (760) 539-8011

5  Attorney for Plaintiffs

E-filing

6              UNITED STATES DISTRICT COURT

7            NORTHERN DISTRICT OF CALIFORNIA

8

9  ASHURST LAND & CATTLE, LLC, and )   Case No.
    RAY GRAY,                        )
10                                   )
                                     )  COMPLAINT FOR:
11            Plaintiffs,            )      1) DAMAGES UNDER CALIFORNIA
    Vs.                              )         CIVIL CODE 3333
12                                   )      2) EQUITABLE ACTION TO SET
    RANCHO MOUNTAIN PROPERTIES, INC.,)         ASIDE TRUSTEE'S SALE FOR
13  a Delaware Corporation, ING INVESTMENT )   VIOLATION OF CALIFORNIA
    MANAGEMENT, LLC., ING USA        )         CIVIL CODE 2924 ET SEQ.
14  ANNUITY AND LIFE INSURANCE       )      3) VIOLATION OF CALIFORNIA
    COMPANY, INC. AN IOWA            )         CODE OF PROCEDURE 726,
15  CORPORATION, and DOES 1 through 100, )     ONE ACTION RULE
    inclusive,                       )      4) NEGLIGENCE
16                                   )      5) DECLARATORY JUDGMENT
17                                   )
              Defendants.            )
18  _____)

19

20

21                        **JURISDICTION**

22      1.  Jurisdiction lies in this Court pursuant to 28 U.S.C. 1332.  RANCHO MOUNTAIN

23  PROPERTIES, INC. is a Delaware corporation.  ING INVESTMENT MANAGEMENT, LLC.

24  is based in Georgia, ING USA ANNUITY AND LIFE INSURANCE COMPANY, INC. is an

25  IOWA CORPORATION, and ASHURST LAND & CATTLE, LLC, ("Ashurst") is a limited

26  liability company organized under the laws of California.  Ray Gray is the manager of Ashurst.

27  The amount in controversy exceeds $75,000, exclusive of interest and costs.

28

1

## VENUE

2.   Venue is proper in this judicial district because ASHURST LAND & CATTLE, LLC is located in this district in San Benito County and property that is the subject of this action is located in this district in San Benito County and plaintiff Gray has residence in this district at all times relevant to this action.

## PRELIMINARY ALLEGATIONS

3.   Defendants Does 1 through 100, inclusive, are sued in this complaint under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this complaint by inserting their true names and capacities herein.

4.   ASHURST LAND & CATTLE, LLC, at all times relevant to this action, had rightful possession of property known as ASHURST RANCH for its operations.

5.   Ray Gray was the manager of ASHURST LAND & CATTLE, LLC, and of PFAU, PFAU & PFAU, LLC, the owner of said property, at all times relevant to this action.

6.   Said ranch is comprised of 140 parcels encompassing approximately 27,000 acres located in San Benito County

7.   RANCHO MOUNTAIN PROPERTIES, INC., Plaintiffs are informed and believe and on that basis allege that RANCHO MOUNTAIN PROPERTIES, INC.. ("RANCHO") was and is a corporation under the laws of Delaware doing business in California at all times mentioned in this complaint.

8.   Plaintiffs are informed and believe and on that basis allege that RANCHO MOUNTAIN PROPERTIES, INC.. ("RANCHO") was and is a subsidiary of ING

INVESTMENT MANAGEMENT, LLC., ("ING"), a limited liability company doing business in California at all times mentioned in this complaint.

9.     Plaintiffs are informed and believe and on that basis allege that RANCHO is a shell company for ING and run by employees of ING that was created on July 1, 2010 for the purpose of the latter's shielding the latter from legal liabilities for its actions, thereby warranting the inclusion of the parent companies in the instant action.

10.     Plaintiffs are informed and believe and on that basis allege that ING USA ANNUITY AND LIFE INSURANCE COMPANY, INC. ("ING USA") was and is a corporation under the laws of Iowa and was and is the parent company to ING INVESTMENT MANAGEMENT, LLC., ("ING") at all times mentioned in this complaint.

11.     Plaintiffs are informed and believe and on that basis allege that ING INVESTMENT MANAGEMENT, LLC., ("ING") was and is a  limited liability company doing business in California at all times mentioned in this complaint.

12.     Plaintiffs are informed and believe and on that basis allege that ING USA ANNUITY AND LIFE INSURANCE COMPANY, INC. ("ING USA") was and is a corporation under the laws of Iowa and was and is the parent company to ING INVESTMENT MANAGEMENT, LLC., ("ING") at all times mentioned in this complaint.

13.     This is an action whereby Plaintiffs allege that Defendants conducted improper unlawful detainer proceedings in San Benito County of real estate that was possessed by ASHURST LAND & CATTLE, LLC.

14.     Said action was based on illegal forcible removal actions and upon improper foreclosure proceedings

15.     Plaintiffs allege that Defendants conducted improper foreclosure proceedings in Fresno County pertaining to this San Benito County property.

16.     Ray Gray suffered financial damages as a result of these actions which deprived him of the benefit of a management agreement pertaining to said property with a company named Gerova, with whom he had a contract worth approximately $400,000,000 but which was severed by the improper unlawful detainer and foreclosure proceedings which deprived him of this benefit.

17.     Plaintiffs are informed and believe and on that basis allege that FIDELITY NATIONAL TITLE COMPANY, ("FIDELITY") was and is a company located in San Francisco, California doing business in California at all times mentioned in this complaint

18.     Fidelity, as agent for Rancho, a subsidiary of ING, had issued Notices of Trustee's Sales, which were being noticed and conducted by DEFAULT RESOLUTION NETWORK, ("DRN") was and is a company located in San Francisco,and PRIORITY POSTING AND PUBLISHING  ("PRIORITY POSTING") Priority Posting, under one Promissory Note pertaining to all of the aforementioned properties allegedly to enforce Deeds of Trust for a claim of approximately $26,000,000 against Plaintiff.

19.     Priority Posting, as agent for DRN and Fidelity, conducted the Trustee's sale that took place in Fresno County on January 3, 2011.   Said sale involved properties in San Benito County consisting of 140 parcels of Ranch property over 27,000 acres and containing oil wells - See Exhibit A for Legal Description - and 3 parcels in Fresno County APN#: 027-150-23S, 027-100-14S and 027-100-15S consisting of 900+ acres. See Exhibit B for Legal Description.

20.     In Defendants' noticing the former sale on or about December 3, 2010,

Defendants took action against properties of Plaintiff while a Temporary Restraining Order of the Fresno County Court was still in effect on behalf of Pfau.  This action was a blatant disregard of said court's order.

21.   Clearly, the Defendants intended to disregard the pending TRO and proceed with or without court determination of the matter.  Such actions were willful and negligent. Whereas the original Notices of Trustees' sales of the properties in the two counties were 2 separate notices for sale in Fresno County (Trustee Sale numbers 10-00993-4 and 10-00994-4), the later notice lumped all the properties of the two counties into one - trustee sale10-00993-4 - in Fresno, disregarding the fact that none of the 140 parcels in San Benito County was located in Fresno County, where 7 other parcels were located.

## FIRST CAUSE OF ACTION

## DAMAGES PER CALIFORNIA CIVIL CODE § 3333.

### (ALL DEFENDANTS)

22.   Plaintiff re-alleges and incorporates by reference paragraphs 1-21 as if fully stated herein.

23.   Under CALIFORNIA CIVIL CODE§ 3333, Defendants may be held liable to plaintiffs for the breach of an obligation not arising from contract, the measure of damages of which is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

24.   This is an action whereby Plaintiffs allege that Defendants conducted

5

improper unlawful detainer proceedings in San Benito County of real estate that was possessed by ASHURST LAND & CATTLE, LLC and improper foreclosure proceedings against the interests of RAY GRAY and ASHURST.

25.     Defendants engaged in illegal forcible removal actions and improper foreclosure proceedings

26.     On January 3, 2011, Rancho conducted an unlawful trustee sale of the San Benito property in Fresno county in violation of Civil Code § 2924g(b) and other California statutes , the former of which states, in relevant part, that "All sales of property under the power of sale contained in any deed of trust or mortgage shall be held in the county where the property or some part thereof is situated…."

27.     No portion of the San Benito County property is in Fresno County – as can be seen on the platt maps pertaining thereto.

28.     On or about January 11, 2011, Defendant Rancho had its hired agent, Kevin Borba, forcibly remove Plaintiffs and Gray's 91 year old father, Raymond Gray, from the subject property.  He changed the locks and denied Plaintiffs entry.  Borba also called in a sheriff's deputy and ordered all to leave and not take any personal property at risk of being arrested. Defendant Rancho also stole Gray's and Ashurst's horses, vehicles, clothing and furniture and failed to return them.

29.     Plaintiffs have been barred from the property ever since.

30.     Defendant subsequently claimed to have given a 3-day notice to quit – which was never served on plaintiffs - and filed a complaint for unlawful detainer on February 22, 2011 in San Benito County Superior Court.  However, when this action was challenged, they dismissed

their complaint and have continued in possession without a lawful judgment for unlawful

detainer against any of the plaintiffs to this action.

31.     One of the parties that was forcibly removed was a lessor, Joe Vargas of JV

Cattle, who had a lease agreement that provided for revenue of approximately $1-3 million per

year to ASHURST and GRAY for grazing rights on the property.  Said ranch had been utilized

for cattle grazing purposes since 1854.  Thus, said grazing rights leasing could reasonably be

expected to continue in perpetuity, which, for at least 50 years, gives rise to a damages claim of

at least $50-150 million, exclusive of farming rights.  Olive farming revenues have been

estimated to generate $10-100 million per year.

32.     Ray Gray suffered financial damages as a result of these actions which deprived

him of the benefit of a management and investment agreement pertaining to said property with a

company with whom he had a contract worth approximately $400,000,000 but which was

severed by the improper unlawful detainer and foreclosure proceedings which deprived him of

this benefit.

33.     Defendants also locked the gates to the property to deprive Gray of the ability to

further the oil well operations on the subject property to his detriment in an amount in excess of

$100,000,000.

34.     In addition, the aforementioned trustee sale was accomplished after a prior sale of

another set of properties of in which plaintiff Gray had an interest – termed "University Heights"

- in San Diego County which consisted of 502 acres of ocean view property and which was also

in escrow with purchaser Gerova for a sale price in the amount of $55,000,000.  Defendants

conducted a trustee sale to satisfy a claim of approximately $26,000,000 – although the principal

was only $19,500,000 and no accounting was given to justify the $26 million claim - and sold this property to its principal for the disproportionately low price of approximately $6,000,000. Defendants failed to credit any plaintiff the fair market value of each parcel, which value was clearly established with the pending purchase price in escrow.

35. Plaintiffs then wrongfully failed to credit the $6,000,000 against the prior balance of $26,000,000 in its notice of Trustee Sale regarding the Ashurst property, overstating to the public the amount of indebtedness as $26,000,000 instead of $20,000,000.

36. These sales were in breach of the duty of the trustee owed to the trustor to exercise due diligence and to obtain the best possible price.

37. Defendant trustee and its agents owed a duty to the trustor (Pfau) and Gray to conduct a sale with due diligence to protect the rights of the trustor and others and use all reasonable efforts to obtain the best price for the properties.  Civil Code 2924.

38. Defendants breached this duty willfully, unlawfully and negligently, described in the following.

39. With full knowledge that the 140 Parcels in San Benito County encompassing 27,421 acres were in escrow with a bona fide purchaser, GEROVA WEST DEVELOPMENT, a subsidiary of GEROVA FINANCIAL GROUP ("GEROVA"), a company listed on the New York Stock Exchange, for a sale price of $158,660,000, defendants willfully and wrongfully sold these properties to its principal for $10,056,000 – a grossly disproportionate sale price, in breach of its duties owed to trustor, Pfau and Gray.   Defendants failed to credit any plaintiff the fair market value of each parcel, which value was not unknown but was clearly established by the pending purchase price in escrow by the buyer, Gerova.

8

40.     Further, this sale included sale of the 900+ acres in Fresno County named Silver Creek Ranch, a separate property from that of Ashurst Ranch, but possessed and run by Ashurst Land and Cattle, LLC, having a fair market value of approximately $4,000,000 – which was included in the purchase price of $158,660,000.  Defendants failed to credit any plaintiff the fair market value of each parcel.

41.     These sales were in breach of the duty of the trustee owed to the trustor to exercise due diligence and to obtain the best possible price.

42.     Further failures by the trustee and its agents in their sale proceedings of the foregoing were as follows:

**a) CIVIL CODE 2924(c) NOTICE REQUIREMENTS WERE VIOLATED.**

43.     Defendants failed to provide proper notice of the sales, in violation of Civil Code 2924(c), which required them to post notices on the property and which they failed to do.

44.     There were no postings on the San Benito County property.

45.     There were no postings on the Fresno County 3 parcels.  The Fresno County property has neighbors who, on one side, have almond trees, and, on the other side, grape vineyards.  These neighbors had previously indicated an interest in purchasing the subject property.  In addition, this property has the major north-south power line for electricity for California running through it.  Failure to post on the property denied the electric power company and the neighbors from having actual notice and an opportunity to bid on the sale of this property.

**b) CIVIL CODE § 2924G(b) WAS  VIOLATED.**

46.     Civil Code § 2924g(b) states, in relevant part, as follows:

"All sales of property under the power of sale contained in any deed of trust or mortgage shall be held in the county where the property or some part thereof is situated...."

47.     No portion of the San Benito County property is in Fresno – as can be seen on the platt maps pertaining thereto in the First American Title Company Preliminary Title Report.  The nearest to Fresno County of the San Benito County property is ten miles away from Fresno County – certainly not constituting a portion of the property to be in Fresno County.

48.     The Sale of San Benito property that is not part of property in Fresno County was improperly included in Fresno County Trustee's Sale, in violation of Civil Code § 2924g(b)

**c)   CALIFORNIA CODE OF CIVIL PROCEDURE 726 WAS NOT ADHERED TO**

49.     CCP § 726 states, in relevant part, as follows:

"(d) If the real property or estate for years therein mortgaged consists of a single parcel, or two or more parcels, situated in two or more counties, the court may, in its judgment, direct the whole thereof to be sold in one of the counties, and upon these proceedings, and with like effect, as if the whole of the property were situated in that county."

50.     As already indicated, no portion of the San Benito County property is in Fresno County.

51.     Before Defendant could sell a property out of the county in which it was located, the proper procedure was to file an action with the appropriate court and request an order for the sale of said property that was in another county.  Defendant should have applied to the appropriate court if it wanted to sell properties of the two counties - San Benito and Fresno – in one county, but failed to do so, in violation of CCP Sec. 726.

52.     Said violations were further compounded in the ultimate Notice of Trustee's Sale and sale that took place, where the properties of both counties were not even in separate sales but all lumped together.

53.     A buyer appeared at the Fresno County auction and offered to buy the separate Fresno County property but was refused, being told he'd have to buy all the properties, including the lion's share of the parcels located in San Benito County. This failure by Plaintiffs to sell the properties separately was a proximate cause of injury to plaintiffs.

**d) DEFENDANTS HAD PUBLICIZED FALSE AND MISLEADING INFORMATION AND ADDRESSES FOR SAID SALES IN VIOLATION OF CALIFORNIA CIVIL CODE 2924f(b).**

54.     Civil Code § 2924g(b) states, in relevant part, as follows:

"In addition to any other description of the property, the notice shall describe the property by giving its street address, if any, or other common designation, if any, and a county assessor's parcel number; but if the property has no street address or other common designation, the notice shall contain a legal description of the property, the name and address of the beneficiary at whose request the sale is to be conducted, and a statement that directions may be obtained pursuant to a written request submitted to the beneficiary within 10 days from the first publication of the notice. Directions shall be deemed reasonably sufficient to locate the property if information as to the location of the property is given by reference to the direction and approximate distance from the nearest crossroads, frontage road, or access road…."

55.     Defendant's original Notice of Trustee's sale falsely describes the Ashurst Ranch property as "vacant land", both in paragraphs 5 and 8. Ashurst Ranch contains two residences, one of which is occupied, two barns, other outbuildings and corrals. This is clearly a deceptive practice, with Defendant knowing full well about the Ranch and its personal property, buildings and residences.

56.     A further deception is to claim that this property's address is "15970 New Idria Road (Ashurst Ranch), Fresno, CA. Said address is in the town of Paicines, CA. This appears to have done to support its sale taking place out of its county, in Fresno, County – which a Fresno address would appear to warrant. And, this is certainly not information "deemed reasonably sufficient to locate the property…" It misleads the public and violates Civil Code § 2924g(b).

**e)     DEFENDANTS ACTED IN VIOLATION OF CALIFORNIA CIVIL CODE 2924g(b) IN FAILING TO OFFER PARCELS FOR SALE SEPARATELY**

57.    Civil Code § 2924g(b) states, in relevant part, as follows:

"(b) When the property consists of several known lots or parcels, they shall be sold separately unless the deed of trust or mortgage provides otherwise. When a portion of the property is claimed by a third person, who requires it to be sold separately, the portion subject to the claim may be thus sold…"

58.    There were 140 and 3 parcels that had been lumped together for the sale, thereby depriving Plaintiff of the opportunity of parcels being sold separately until defendant's claim can be satisfied, in violation of Civil Code § 2924g(b).  Plaintiff had specifically requested this several times but said request was ignored each time, in violation of the statutory language that "when the property consists of several known lots or parcels, they <u>shall</u> be sold separately".  The relevant deeds of trust did not provide otherwise.

59.    A buyer appeared at the Fresno County auction and offered to buy the Fresno County property but was refused, being told he'd have to buy all the properties, including lion's share of the parcels located  in San Benito County.

**f)    DEFENDANTS FAILED TO HONOR THE TRUSTOR'S RIGHT TO DIRECT THE ORDER IN WHICH PROPERTY IS TO BE SOLD IN VIOLATION OF CALIFORNIA CIVIL CODE 2924g(b)**

60.    Civil Code § 2924g(b) states, in relevant part, as follows:

"b)  The trustor, if present at the sale, may also, unless the deed of trust or mortgage otherwise provides, direct the order in which property shall be sold, when the property consists of several known lots or parcels which may be sold to advantage separately, and the trustee shall follow that direction. After sufficient property has been sold to satisfy the indebtedness, no more can be sold. "

61.    Plaintiff Gray's counsel had faxed two letters to Fidelity – one, on September 16, 2010, the other, on September 22, 2010 both requesting that Fidelity confirm by the next day that it will honor the Trustor (Pfau)'s right to direct the order in which the property is to be sold. Fidelity and Priority Posting failed to honor this request, in violation of California Civil Code 2924g(b).

62.    Plaintiff Gray was present at the foreclosure sale and requested to direct the order in which the property was to be sold, but said request was ignored, in violation of California Civil Code 2924g(b).

63.    As a proximate result of defendant's willful and negligent breaches of the duties owed to plaintiff, plaintiffs suffered damages of approximately $1.263 billion.

## SECOND CAUSE OF ACTION

## PLAINTIFFS ARE ENTITLED TO SET ASIDE THE TRUSTEE SALE BY

## DEFENDANTS DUE TO DEFENDANTS' VIOLATION OF CALIFORNIA

## CALIFORNIA CIVIL CODE § 2924

64.    Plaintiff re-alleges and incorporates by reference paragraphs 1-63 as if fully stated herein.

65.    The wrongful violations of CALIFORNIA CIVIL CODE § 2924 cited in the previous paragraphs are also grounds for setting aside the named Trustee's Sales, especially given the gross disproportion between the trustee sale prices to the actual purchase values indicated in the pending escrows, the trustee sale having a sale price of $10 million in contrast to a purchase price in escrow in the amount of $158.660 million;

66.    Thus, in the event that the claim for damages does not prevail, then said sale should be set aside and the possession of the properties restored to Plaintiff Ashurst.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CODE OF CIVIL PROCEDURE 726,

## THE "ONE ACTION" RULE

67.    Plaintiff re-alleges and incorporates by reference paragraphs 1-66 as if fully

stated herein.

68.     CCP § 726 states, in relevant part, as follows:

"(a) There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter..."

69.     With full knowledge that the properties of Pfau – termed "University Heights" in San Diego County which consisted of 502 acres of ocean view property and which was in escrow with purchaser Gerova for a sale price of $55,000,000, Defendants conducted a trustee sale to satisfy a claim of approximately $26,000,000 and sold this property to its principal for the disproportionately low price of $6,000,000.     Said Trustee's sale took place in San Diego County in late 2010, Notice of Trustee's Sale for Trustee Sale No. 10-00995-4.

70.     The $55,000,000 purchase price in escrow is a value that more than satisfied Defendants' principal's claim for $26,000,000.  Thus, it was improper for them to proceed against Pfau for additional monies in the Trustee's sale of January 3, 2011, having already had their one action to satisfy their claim and artificially creating a false "deficiency" by a grossly undervalued sale price to its principal of $6 million.

71.     This wrongful action was the proximate cause of damage to Plaintiffs in an amount in excess of $1,263,000,000.

## FOURTH CAUSE OF ACTION

### NEGLIGENCE

72.     Plaintiffs reallege and incorporate herein Paragraphs through 1-71 as if fully stated herein.

73.     Defendants owed Plaintiffs a duty to exercise due care in their conduct of said trustee's sales.

14

74. Defendants FIDELITY, DEFAULT RESOLUTION NETWORK AND PRIORITY POSTING, and each of them, breached the standard of care owed to plaintiffs, as described in the foregoing paragraphs.

75. As a legal and proximate result of these breaches of said standard of care by Defendants, Plaintiffs have suffered past economic and general damages in an amount subject to proof at trial.

## FIFTH CAUSE OF ACTION

## DECLARATORY JUDGMENT SHOULD BE

## RENDERED IN FAVOR OF PLAINTIFFS

76. Plaintiff re-alleges and incorporates by reference paragraphs 1-75 as if fully stated herein.

77. An actual controversy has arisen and now exists between plaintiff and defendants concerning their respective rights and duties, as indicated in the foregoing paragraphs.

78. Plaintiff desires a judicial determination of /its rights and duties.

79. A judicial declaration is necessary and appropriate at this time under the circumstances in order that plaintiff may ascertain his/her/its rights and duties and the damages or remedies to which it is entitled.

WHEREFORE, plaintiff prays judgment on each cause of action and on all counts as follows:

1. For DAMAGES of $1,263,000,000;

2. For setting aside trustee's sale;

2. For cancellation of trustee deed;

3. For declaratory relief establishing the rights of plaintiffs herein.

15

4.   For attorney fees and costs of suit incurred in this action: and

5    For such other and further relief as the court deems proper.

Date: June \_\_\_, 2011                    LAW OFFICES OF JAMES N. MAYNARD


JAMES N. MAYNARD, Attorney for Plaintiffs

16