# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHURST LAND & CATTLE, LLC; et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>RANCHO MOUNTAIN PROPERTIES, INC.; et al.,<br><br>Defendants. | CASE NO. 12-CV-1328 BEN (BLM)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**(2) GRANTING DEFENDANTS' MOTION TO EXPUNGE LIS PENDENS**<br><br>[Docket Nos. 53, 54] |

Presently before the Court are: (1) Defendants' Motion to Dismiss (Docket No. 54); and (2) Defendants' Motion to Expunge Lis Pendens (Docket No. 53). For the reasons stated below, both Motions are **GRANTED**.

## BACKGROUND

### I. UNDERLYING BANKRUPTCY ACTION

On December 16, 2008, Pfau, Pfau & Pfau, LLC ("Pfau"), whose manager was then Plaintiff Ray Gray,[1] filed a voluntary petition in the United States Bankruptcy Court for the Southern District of California. At that time, Pfau owned real properties commonly known as "Ashurst Ranch" and "University Heights" ("Properties"). These

---

[1] CMR, to whom Ray Gray assigned a controlling interest in Pfau, removed Ray Gray as manager of Pfau on August 24, 2010. (RJN [Docket No. 54], Exh. C ¶ 4.) Ray Gray did not disclose to Defendants or the Bankruptcy Court that he had been removed as Pfau's manager until over a year later, on September 2, 2011. (*See id.*)

Properties secured a debt owed by Pfau to Defendant Rancho Mountain Properties, Inc. ("Rancho")'s predecessor-in-interest, Defendant ING USA Annuity and Life Insurance Company ("ING USA"), in the original principal amount of $19,500,000. (RJN [Docket No. 54], Exh. A, at 2.)[2]

On May 29, 2009, ING USA filed a motion for relief from the automatic stay, after Pfau failed to find a viable cash purchaser of the Properties. After a five-month protracted negotiation, Pfau, ING USA, and CMR (a junior lien holder, and later the main equity holder of Pfau) stipulated to lift the automatic stay. On October 22, 2009, the Bankruptcy Court entered an order lifting the automatic stay pursuant to the terms of the stipulation ("Relief Stay Order"). (*Id.*, Exh. B.) The Relief Stay Order expressly forbid Pfau from "seek[ing] an injunction" to delay foreclosure. (*Id.* at 14.)

## II. RAY GRAY CONTESTS THE FORECLOSURE OF THE PROPERTIES

For the past four years, Ray Gray has engaged in litigation against Defendants, contesting the foreclosure of the Properties. For instance, Ray Gray obtained *ex parte* temporary restraining orders in both the San Diego County and Fresno County Superior Courts to enjoin the foreclosure sales on the Properties, in violation of the Relief Stay Order. (*Id.*, Exh. A, at 2.) Ray Gray perjured himself to both courts by filing a series of verified complaints under oath on "Pfau's behalf" after he had been removed as Pfau's manager. (*Id.*) Ray Gray also recorded multiple *lis pendens* on the Properties in connection with the suits, and refused to withdraw them, even after the cases were dismissed. (*Id.*, Exh. D.) The temporary restraining orders were eventually dissolved and the *lis pendens* removed from title. Rancho foreclosed on University Heights on November 2, 2010, and on Ashurst Ranch on January 3, 2011. (RJN [Docket No. 53], Exh. B.)

On January 20, 2011, after the foreclosures of the Properties took place, a

---

[2] Defendants' Requests for Judicial Notice (Docket Nos. 53, 54, 58) are **GRANTED**. *See* FED. R. EVID. 201(b); *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir. 1995), *rev'd on other grounds*, 520 U.S. 548 (1997); *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005).

chapter 11 trustee was appointed in the Pfau bankruptcy case, with Ray Gray's consent. (RJN [Docket No. 54], Exh. E.) A few weeks later, Ray Gray, despite no longer being a manager of Pfau, filed a third adversary case on "Pfau's behalf" against Rancho based on the alleged wrongful foreclosure. (*Id.*, Exh. F.) The Bankruptcy Court granted Rancho's motion to dismiss that action on April 13, 2011. (*Id.*, Exh. G.)

### III. SETTLEMENT OF CLAIMS FOR WRONGFUL FORECLOSURE

On April 27, 2012, the Bankruptcy Court approved a Settlement Agreement and Mutual Release of All Claims on behalf of the estate of Pfau, with ING USA, Defendant ING Investment Management, LLC, Lion II Custom Investments, LLC, and Rancho. (*Id.*, Exh. I.) Pursuant to the settlement agreement, Pfau's bankruptcy trustee fully released:

> any and all claims related . . . to the Properties, as well as any and all claims related to foreclosures of such Properties and the rights of the [Defendants] to ownership and peaceful possession of such Properties, and any and all claims related to the Loan Agreement dated as of August 28, 2006, entered into by and between Pfau and ING's assignor and all loan documents related thereto, including but not limited to a certain promissory note, and certain deeds of trust, as amended or modified, for which the Properties were collateral (collectively, the "Loan"), including but not limited to any claims for lender liability or equitable subordination and any actions taken by [Defendants] in connection with or enforcement of the Loan.

(*Id*. § 3.)

### IV. THE PRESENT ACTION

On June 23, 2011, Plaintiffs Ashurst Land and Cattle, LLC, Ray Gray, and Linda Gray filed the present action in the Northern District of California. This case was transferred to the Southern District on June 4, 2012. Plaintiffs filed a Second Amended Complaint[3] on June 18, 2102. The Second Amended Complaint alleged: (1) abuse of

---

[3] Plaintiffs filed the Second Amended Complaint without leave from the Court or consent from Defendants, in violation of the Federal Rules of Civil Procedure. "In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the

process; (2) breach of implied covenant of good faith and fair dealing; (3) elder abuse under California Welfare & Institutions Code § 15610.30; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) intentional interference with prospective economic advantage; (7) negligence; (8) negligent interference with prospective economic advantage; (9) tortious interference with contract; (10) unjust enrichment; (11) damages under California Civil Code § 3333; (12) conversion; (13) unfair business practices; and (14) assault.

Presently before the Court are: (1) Defendants' Motion to Dismiss Claims 1 through 13; and (2) Defendants' Motion to Expunge Lis Pendens.

## DISCUSSION

### I.  MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully"). Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

All of a debtor's legal and equitable interests in property at the commencement of a bankruptcy case are automatically included in the bankruptcy estate. 11 U.S.C. § 541(a)(1); *see also Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005). "If the debtor suffered an injury, the trustee has standing to pursue a claim

---

court's approval." *See United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 295 (5th Cir. 2003) (internal quotation marks omitted). Here, the First Amended Complaint and Second Amended Complaint assert the same claims. Accordingly, Plaintiffs lacked standing to bring Claims 1 through 13, as discussed below, regardless of whether the First or Second Amended Complaint is the operative complaint.

seeking to rectify such injury." *Arthur Andersen*, 421 F.3d at 1002. "[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate." *Estate of Spirtos v. Superior Court*, 443 F.3d 1172, 1176 (9th Cir. 2006).

In regards to wrongful foreclosure claims, such claims belong to the bankruptcy trustee regardless of whether the foreclosure occurred before or after the petition is filed. *See, e.g.*, *In re Greenhaw Energy, Inc.*, 359 B.R. 636, 641-42 (Bankr. S.D. Tex. 2007); *Jefferson v. Miss. Gulf Coast YMCA, Inc.*, 73 B.R. 179, 181-82 (S.D. Miss. 1986). Similarly, the trustee has the exclusive right to pursue relief for contracts to which the debtor is a signatory. *See In re Cannonsburg Envtl. Assocs., Ltd.*, 72 F.3d 1260, 1265 (6th Cir. 1996).

Claims 1 through 13 are premised on the allegations that: (1) Rancho "unlawfully foreclosed" on the Properties; and (2) Rancho "interfered" with Plaintiffs' escrow agreements for the sale of the real properties to a company called Gerova Financial Group. Specifically, Claim 1, abuse of process, alleges that Defendants abused "civil legal process" with "tortious and unlawful foreclosure and Trustee's Sales processes." (FAC ¶¶ 37, 38; SAC ¶¶ 37, 38.)

Claim 2, breach of implied covenant of good faith and fair dealing, alleges that Defendants "devis[ed] and implement[ed] an unlawful scheme to acquire all of the Plaintiffs' Assets [i.e., the Properties]." (FAC ¶ 43; SAC ¶ 43.)

Claim 3, elder abuse, alleges that Defendants "wrongfully and unlawfully obtaine[d] and retain[ed] Plaintiff Ray Gray's personal and real property." (FAC ¶ 47; SAC ¶ 47.)

Claim 4, intentional infliction of emotional distress, alleges that "Defendants intentionally interfered with Plaintiffs' contracts in escrow." (FAC ¶ 54; SAC ¶ 54.)

Claim 5, negligent infliction of emotional distress, alleges that Defendants "conspir[ed] in bad faith to thwart Plaintiffs' contracts in escrow." (FAC ¶ 60; SAC ¶ 61.)

Claim 6, intentional interference with prospective economic advantage, alleges

that "Defendants interfered with said deals in escrow in order to be able to foreclose [on the Properties] and initiate [an] unlawful Trustee's Sales scheme." (FAC ¶ 66; SAC ¶ 67.)

Claim 7, negligence, alleges that Defendants breached a "duty by conducting Trustee's Sales in an unreasonable fashion that deprived Plaintiffs of the reasonable value of their properties." (FAC ¶ 71; SAC ¶ 72.)

Claim 8, negligent interference with prospective economic advantage, alleges that "Defendants interfered with . . . deals in escrow in order to be able to foreclose [on the Properties] and initiate the unlawful Trustee's Sales scheme." (FAC ¶ 76; SAC ¶ 77.)

Claim 9, tortious interference with contract, alleges that "Defendants unreasonably, unnecessarily, and interfered with . . . deals in escrow by taking affirmative action to block, delay, or thwart said deals in order to be able to foreclose and initiate the unlawful Trustee's Sales scheme." (FAC ¶ 83; SAC ¶ 84.)

Claim 10, unjust enrichment, alleges that "Defendants greatly and unjustly enriched themselves with over $200 million in real property assets." (FAC ¶ 89; SAC ¶ 90.)

Claim 11, damages under California Civil Code § 3333, alleges that Defendants "failed to offer the Ashurst Ranch parcels for sale individually" and "failed to sell the University Heights property by parcel" and did not "preserve [Ray Gray's] and other Plaintiffs' equity." (FAC ¶¶ 98, 99; SAC ¶¶ 99, 100.)

Claim 12, conversion, alleges that Defendants "[m]aliciously schem[ed] to obtain all of Plaintiffs' Assets in unlawful proceedings [and] improperly and unlawfully dispossess[ed] Plaintiffs of their real and personal property." (FAC ¶ 104; SAC ¶ 105.)

Claim 13, unfair business practices, alleges that Defendants "consummat[ed] an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of the reasonable value of their Assets [i.e., the Properties]." (FAC ¶ 108; SAC ¶ 109.)

Because the Properties were owned by Pfau, Pfau's bankruptcy estate had

exclusive standing to sue for any wrongful foreclosure. Any unlawful foreclosure claims, however, were settled and released by Pfau's bankruptcy estate. In addition, Plaintiffs were not parties to the escrow agreements entered into by Pfau and Gerova, and these escrow agreements were not approved by the Bankruptcy Court.

Plaintiffs argue that they have standing to pursue Claims 1 through 13 because they are the "aggrieved parties pursuant to common law and statutory causes of action." (Opp., at 12.) This argument misses the point. Plaintiffs do not deny that the unlawful foreclosure claims were owned, settled, and released by Pfau's bankruptcy estate. In addition, Plaintiffs do not argue that they were parties to the escrow agreements or that the escrow agreements were approved by the Bankruptcy Court. Accordingly, Plaintiffs do not have standing to bring Claims 1 through 13. As this issue is dispositive, the parties' remaining arguments will not be addressed.

## II. MOTION TO EXPUNGE LIS PENDENS

"A party who asserts a claim to real property can record a notice of lis pendens, which serves as notice to prospective purchasers, encumbrancers and transferees that there is litigation pending that affects the property." *Amalgamated Bank v. Superior Court*, 149 Cal. App. 4th 1003, 1011 (3d Dist. 2007). "A lis pendens acts as a cloud against the property, effectively preventing sale or encumbrance until the litigation is resolved or the lis pendens is expunged." *Id*.

A party may move to expunge a lis pendens. CAL. CODE CIV. PROC. § 405.30. According to California Code of Civil Procedure § 405.32, "the court shall order that the notice [of pendency of action] be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." A "real property claim" is defined as "the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property." CAL. CODE CIV. PROC. § 405.4. "Probable validity" is defined as "more likely than not that the claimant will obtain a judgment against the defendant on the [real property] claim." CAL. CODE CIV. PROC. § 405.3. The claimant

has the burden of showing the probable validity of the claim. CAL. CODE CIV. PROC. § 405.32; *Ziello v. Superior Court*, 36 Cal. App. 4th 321, 332 (2d Dist. 1995).

Here, Plaintiffs cannot establish any valid cause of action that could affect title to the Properties because Plaintiffs have no legal right to seek to undo Rancho's foreclosure or otherwise affect or impact title to the Properties. As explained above, any claims for wrongful foreclosure belonged to Pfau's bankruptcy trustee, who settled and released such claims. Indeed, Plaintiffs concede that "given the current status of Plaintiffs' Complaint, Defendants' Motion to Expunge Lis Pendens is well taken." (Opp. at 1.)

In addition, a lis pendens must be supported by admissible evidence such as a verified complaint or verified declaration to establish the probability of the plaintiff's claims. *Burger v. Superior Court*, 151 Cal. App. 3d 1013, 1019 (1st Dist. 1984). Unsupported statements of counsel are insufficient. *Id*. Here, the Opposition is not supported by any evidence or declaration, and the Complaint has not been verified. Plaintiffs' allegations of "possessory surface rights" does not meet the "probable validity" standard.

First, Plaintiffs argue that they "have recently become aware of certain possessory surface rights by virtue of lease or its equivalent on what they strongly believe to be unlawfully and wrongfully foreclosed-upon properties." (Opp. at 3.) Plaintiffs, however, do not assert any details about these "possessory surface rights" in either the Opposition or the Second Amended Complaint. In order to assert a lis pendens against the Properties, Plaintiffs have the burden to show the "probable validity" of any claims that would affect Rancho's title or possessory interests in the real property. *See* CAL. CODE CIV. PROC. § 405.32. Plaintiffs have failed to meet that burden here.

Second, Plaintiffs argue that in January 2011, ING North American Insurance Corporation entered a 1099-C filing that effectively cancelled a debt that was guaranteed by Pfau for $11.7 million. (Opp. at 2; Notice of Errata at 1-2.) According

to Plaintiff, this calls into question "which entity had the right to foreclose on the properties at issue in the Lis Pendens" and "whether Rancho Mountain Properties is the proper party to request judicial relief to expunge the Lis Pendens." (Opp. at 2-3.) The 1099-C, however, does not confer any standing on Plaintiffs to bring a wrongful foreclosure action.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. Claims 1 through 13 are **DISMISSED WITH PREJUDICE**.

In addition, Defendants' Motion to Expunge Lis Pendens is **GRANTED**.

**IT IS SO ORDERED**.

DATED:  June 10, 2013

Hon. Roger T. Benitez
United States District Judge